UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

SCOTT G. SEWELL,           )
                          )
        Plaintiff,         )
                          )
                          )        No. 1:05-CV-298
v.                         )
                          )        Collier / Lee
JO ANNE B. BARNHART,       )
Commissioner of Social Security,   )
                          )
        Defendant.         )

## REPORT AND RECOMMENDATION

This action was instituted by the plaintiff Scott G. Sewell ("Plaintiff") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") awarding the Plaintiff a closed period of disability commencing May 1, 2001 and ending on September 27, 2004, and disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 416(i), 423 ("the Act"). This matter was referred to the undersigned pursuant to 28 U.S.C. § 636(b) and Rule 72(b) of the Federal Rules of Civil Procedure for a report and recommendation regarding the disposition of Plaintiff's motion for judgment on the pleadings [Doc. No. 6] and Defendant's motion for summary judgment [Doc. No. 9].

For the reasons stated herein, it is **RECOMMENDED** that the decision of the Commissioner be **REVERSED** and **REMANDED** under sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this report and recommendation.

## Administrative Proceedings

On February 21, 2003, Plaintiff filed an application for DIB benefits, alleging disability since May 1, 2001 (Tr. 62-65). After his application was denied initially and on reconsideration (Tr. 37-40), Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). On May 20, 2004, Plaintiff appeared, with counsel, and testified at the hearing before the ALJ (Tr. 333-73). A supplemental hearing was held on January 19, 2005, at which a vocational expert ("VE") testified (Tr. 374-87). In a decision dated February 10, 2005, the ALJ found Plaintiff had been disabled for a closed period from May 1, 2001 until September 27, 2004, the date the ALJ found the Plaintiff's impairments medically improved such that he had the residual functional capacity ("RFC") to engage in gainful work activity (Tr. 22). The ALJ's decision became the final decision of the Commissioner on August 29, 2005, when the Appeals Council denied Plaintiff's request for review (Tr. 5-7).

## Standard of Review

The Court must determine whether the ALJ failed to apply the correct legal standard and whether the ALJ's findings of fact were unsupported by substantial evidence. 42 U.S.C. § 405(g); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "This Court must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) (quoting *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997)). If there is substantial evidence to support the Commissioner's findings, they should be affirmed, even if the Court might have decided facts differently, or if substantial evidence also would have supported other findings. *Smith v. Chater*, 99 F.3d 780, 782

(6th Cir. 1996); *Ross v. Richardson*, 440 F.2d 690, 691 (6th Cir. 1971). The Court may not re-weigh the evidence and substitute its own judgment for that of the Commissioner merely because substantial evidence exists in the record to support a different conclusion. The substantial evidence standard allows considerable latitude to administrative decision makers because it presupposes there is a zone of choice within which the decision makers can go either way, without interference by the courts. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citing *Mullen v. Bowen*, 800 F.2d 535, 548 (6th Cir. 1986)); *Crisp v. Sec'y of Health & Human Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986). The Court may consider any evidence in the record, regardless of whether it has been cited by the ALJ. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The Court of Appeals for the Sixth Circuit ("Sixth Circuit") has held that substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Garner*, 745 F.2d at 388 (citation omitted).

### How Disability Benefits Are Terminated

Disability is defined as the inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A). Once a plaintiff has been found to be entitled to DIB benefits, the Commissioner's regulations provide an eight-step inquiry for evaluating whether an individual's disability continues for purposes of receipt of those DIB benefits. 20 C.F.R. § 404.1594(f). The following are the eight steps in the DIB termination analysis:

Step 1: Is claimant engaged in substantial gainful activity? If so, (and any applicable trial work period has been completed) the claimant is not disabled. If not, proceed to Step 2.

Step 2:  Does claimant have a "severe" impairment or combination of impairments which meets or equals the severity of an impairment listed in 20 C.F.R., Part 404, Subpart P, Appendix 1?  If so, the claimant's disability will be found to continue.  If not, proceed to Step 3.

Step 3:  Has there been a medical improvement in the claimant's impairment(s) as shown by a decrease in the medical severity of the impairments which were present at the time of the most recent favorable medical decision that the claimant was disabled or continued to be disabled?  If so, proceed to Step 4.  If not, proceed to Step 5.

Step 4:  Is the medical improvement in the claimant's impairments related to the claimant's ability to work (*i.e.*, has there been an increase in the claimant's RFC based upon the impairment(s) present at the time of the most recent favorable medical determination)?  If so, proceed to Step 6.  If not, proceed to Step 5.

Step 5:  If there is no medical improvement or the medical improvement is not related to the claimant's ability to work, do any of the exceptions from the first or second group of exceptions to medical improvement apply?[1]  If an exception from the first group of exceptions to medical improvement applies, proceed to Step 6.  If an exception from the second group of exceptions to medical improvement applies, the claimant's disability will be found to have ended.

Step 6:  If the claimant's medical improvement is related to his ability to work or an exception from the first group of exceptions to medical improvement applies, are the claimant's current impairment or current combination of impairments severe?  If so, proceed to Step 7.  If not, the claimant's disability will be found to have ended.

---

[1]  The first and second exceptions to medical improvement are set forth at 20 C.F.R. § 404.1594(d), (e), respectively.  None of the exceptions to medical improvement are relevant to this action.

Step 7: If the claimant's impairment or combination of impairments are severe, does the claimant's RFC permit claimant to perform work the claimant has performed in the past? If so, the claimant's disability will be found to have ended. If not, proceed to Step 8.

Step 8: Given the claimant's age, education and past work experience, does the claimant retain the RFC to perform other work in the economy? If so, the claimant's disability will be found to have ended. If not, the claimant's disability will be found to continue.

## ALJ's Findings

The ALJ made the following findings in support of Commissioner's decision, which are conclusive if they are supported by substantial evidence in the record:

1. The claimant meets the nondisability requirements set forth in Section 216(i) of the Social Security Act, and is insured for benefits at least through the date of this decision.

2. The claimant has not engaged in substantial gainful activity since the alleged onset date of disability (20 CFR § 404.1520(b)).

3. The claimant has an impairment or a combination of impairments considered "severe" based on the requirements in the Regulations 20 CFR § 404.1520(c).

4. These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulations No. 4.

5. The claimant's allegations regarding his subjective limitations are not totally credible for the reasons set forth in the body of the decision.

6. The undersigned has carefully considered all of the medical opinions in the record regarding the severity of the claimant's impairments (20 CFR § 404.1527).

7. From May 1, 2001 until September 27, 2004, the claimant was unable to perform even sedentary work activity on a full-time basis (20 CFR § 404.1567).

8.     Beginning September 27, 2004, the claimant retains the residual functional capacity to perform a reduced range of light work activity and a full range of sedentary work activity (20 CFR § 404.1567).

9.     The claimant is unable to perform any past relevant work (20 CFR § 404.1565).

10.     The claimant is 43 years of age, which is described as a younger individual (20 CFR § 404.1563).

11.     The claimant has a high school education (20 CFR § 404.1564).

12.     The claimant has relevant semi-skilled work experience, but does not have skills transferable to light and sedentary work (20 CFR § 404.1568).

13.     Based upon the claimant's residual functional capacity, from May 1, 2001, until September 27, 2004, and the vocational factors, there were no jobs existing in significant numbers which the claimant could have performed. This finding is based upon Section 201.00(h) of the Medical-Vocational Guidelines, 20 CFR Part 404, Appendix 2 to Subpart P, Regulations No. 4, and <u>Social Security Ruling 96-8p and 96-9p</u>.

14.     Considering the claimant's residual functional capacity and vocational factors, beginning September 27, 2004, there are a significant number of jobs existing in the economy which the claimant can perform. A finding of "not disabled" is warranted under the framework of Rules 202.21 and directed conclusion of Rule 201.28 of Appendix 2, Subpart P, Regulations No. 4.

15.     The claimant's impairments medically improved beginning September 27, 2004, and this improvement is related to the ability to work (20 CFR § 404.1564).

16.     The claimant was under a "disability," as defined in the Social Security Act, from May 1, 2001 until September 27, 2004, but is not disabled thereafter (20 CFR § 404.1520(g)).

(Tr. 21-22).

### Issues Presented by Plaintiff

Plaintiff contends the ALJ erred in concluding that as of September 27, 2004, Plaintiff's RFC had improved sufficiently to permit him to return to light exertional or sedentary work. In challenging the ALJ's decision to terminate his DIB benefits as of September 27, 2004, Plaintiff asserts: (1) the ALJ's finding of medical improvement as of September 27, 2004 is counter to the opinions and treatment notes of Plaintiff's treating physicians; (2) the record does not show an improvement in Plaintiff's condition after Dr. Ball's February 2004 assessment; (3) Plaintiff's symptoms are not sufficiently controlled by medication as to allow him to return to work as of September 27, 2004; (4) Dr. King's September 2004 consultative examination was insufficient to show medical improvement; (5) there is no change in the objective evidence to justify the ALJ's finding that Plaintiff's condition improved as of September 27, 2004; and (6) Plaintiff's activities of daily living do not support a finding that Plaintiff's disability ended on September 27, 2004 [Doc. Nos. 7, 12].

### Review of Evidence

*Plaintiff's Age, Education, and Past Work Experience*

Plaintiff alleges disability beginning May 1, 2001, primarily as the result of degenerative disc disease (Tr. 62, 70). Plaintiff was 43 years old at the time of the ALJ's decision. He has a high school education (Tr. 76) and past work experience as an upholsterer and re-worker (Tr. 71).

*Medical Evidence*

In summary, Plaintiff contends he has a disabling chronic pain condition following back surgery. As set forth in the Commissioner's summary of the medical evidence, which has not been challenged by the Plaintiff, the medical evidence shows a history of low back pain since 1999 (Tr.

170-71, 225). Treatment with medication, physical therapy, and epidural steroid injections provided limited improvement (Tr. 156-71). On March 2, 2001, a provocative lumbar diskography showed a demonstrative posterolateral annular tear at L3-L4 and demonstrable posterior annular tears at L4-L5 and L5-S1, and the post-operative diagnosis was lumbar spondylosis (Tr. 106-07).

On April 13, 2001, Plaintiff had a consultation with Scott Hodges, D.O., an orthopedic surgeon (Tr. 183-85). Dr. Hodges diagnosed discogenic low back pain and recommended surgery (Tr. 184-85). On May 23, 2001, Plaintiff underwent: a left L4 and L5 hemilaminectomy and inferior facetectomy; a transforaminal discectomy L4-5, L5-S1; and a transforaminal lateral interbody fusion at L4-S1 (Tr. 111-12, 120-21, 123-24, 182). On July 24, 2001, Plaintiff reported 20 percent overall improvement since surgery (Tr. 181).

On September 14, 2001, Dr. Scott Hodges completed an attending physician's statement for Plaintiff's employer (Tr. 150-51). Dr. Hodges noted Plaintiff's symptoms had first appeared approximately four years earlier (Tr. 151). Dr. Hodges indicated Plaintiff had undergone a transforaminal lateral interbody fusion at L4-S1, Plaintiff's subjective complaints were low back and bilateral leg pain, Plaintiff was disabled from April 25, 2001, and Plaintiff would be unable to return to work for an undetermined amount of time (*id.*).

In December 2001, Plaintiff underwent one session of physical therapy, but failed to appear for his subsequent appointments (Tr. 152-55). At the December 6, 2001 therapy session, Plaintiff reported his subjective pain was two out of ten (Tr. 154).

Plaintiff's physical examinations by Dr. Hodges from June 2001 through November 2002 demonstrated negative straight leg raising and full motor strength in the lower extremities; his x-rays showed his hardware was in excellent position (Tr. 175-81). Plaintiff reported his medications were

effective in controlling his pain, but his pain intensified with standing (Tr. 175-78). On November 12, 2002, Dr. Hodges stated, "Patient will always need chronic pain management. I don't think he is capable of work" (*id.*). Dr. Hodges indicated he would follow-up with Plaintiff as needed (*id.*). On January 6, 2003, Dr. Hodges submitted a form to Plaintiff's disability insurance company in which he indicated he did not anticipate Plaintiff would ever be released to return to work (Tr. 280). Hodges also indicated Plaintiff had been referred for chronic pain management (*id.*).

Following his back surgery, Plaintiff received pain management care at Consultants in Pain Management, primarily from Gregory Ball, M.D., through October 2004 (Tr. 186-207, 251- 62, 282-84, 320-28). Plaintiff was treated with medication; he denied adverse side effects from his medications and he subsequently reported that his medications worked well and improved his pain (Tr. 186, 196, 204, 251-61, 282, 320-28). Plaintiff's physical examinations generally showed tenderness, a limited range of back motion, and occasional positive straight leg raising tests (Tr. 186-207, 251-62, 283, 322-27). On September 3, 2002, a CT scan of Plaintiff's lumbar spine showed only post-surgical changes (Tr. 208). In April and July 2003, Dr. Ball indicated Plaintiff's medical management was working well (Tr. 187, 262).

On April 29, 2003, Plaintiff told Dr. Ball his pain was eight out of ten and that his pain was made worse by any activity (Tr. 186). Dr. Ball noted Plaintiff had a full range of motion of his lower extremities, but did complain of pain (*id.*). Plaintiff had tenderness to palpation in his lumbar spine with radiation into his bilateral lower extremities; straight leg raising was within normal limits at 90 degrees, seated; and Plaintiff's gait was antalgic (*id.*). Dr. Ball's impression was: lumbar degenerative disc disease with radiculopathy, status post-lumbar fusion at L5-S1; probable peripheral neuropathy; depression and anxiety secondary to chronic conditions; and obesity and

generalized deconditioning (Tr. 187).

On January 28, 2004, Plaintiff underwent a functional capacity evaluation ("FCE") at the request of Dr. Ball (Tr. 228-49). According to the evaluation, Plaintiff demonstrated abilities in the medium physical demand classification determined through the Department of Labor for an eight-hour day (Tr. 228). The FCE indicated Plaintiff would benefit from additional strengthening in low back and an increase in lifting tolerance to assist him in returning to work for a full eight-hour day (*id.*) The results of the FCE also suggested Plaintiff's effort in completing the FCE was reliable (*id.*).

Dr. Ball saw Plaintiff on February 2, 2004 (Tr. 253-54). Plaintiff rated his pain as five out of ten and stated standing and exercise made it worse; but sitting, lying down and medication made the pain better (Tr. 253). On physical examination, seated leg raises were positive for low back and bilateral lower extremity pain (*id.*). Plaintiff had lumbar paravertebral tenderness with low back pain at 40 degrees forward flexion and ten degrees posterior extension (Tr. 254). Dr. Ball's primary impression was status post-lumbar surgery and pain related to: (1) lumbar degenerative disk disease and (2) lumbar facet arthropathy (*id.*). Dr. Ball's secondary impression was: (1) insomnia, stable and (2) depression, stable (*id.*).

On February 24, 2004, Dr. Ball submitted a form in which he opined Plaintiff could sit 45 minutes at a time and four hours total in an eight hour day, stand or walk 20 minutes at a time and two hours total in an eight hour day, and lift/carry up to ten pounds frequently, 20 pounds occasionally, and 25 pounds infrequently (Tr. 264). Plaintiff had environmental restrictions against vibration, hazardous machinery, and heights (Tr. 265). He needed to rest for 15 minutes every two hours (Tr. 265), and would require about six absences per month (Tr. 266). Dr. Ball concluded that,

based upon Plaintiff's physical limitations, current deconditioning and limited education and training, it was "highly unlikely [Plaintiff] could find or maintain suitable gainful employment." (Tr. 266).

When Dr. Ball saw Plaintiff on April 1, 2004, Plaintiff rated his pain as seven out of ten and stated standing and walking made it worse, but lying down and medication made it better (Tr. 251). Plaintiff had a full range of motion of his upper extremities, straight leg raises were positive for right leg and right groin pain, and Plaintiff experienced back pain on forward flexion and posterior extension (Tr. 252). Dr. Ball's primary impression was pain related to lumbar degenerative disc disease and lumbar facet arthropathy and status post lumbar spinal fusion (*id.*). On May 11, 2004, when Dr. Ball saw Plaintiff, Plaintiff rated his pain as five out of ten and indicated standing and walking made his pain worse (Tr. 282). On physical examination, Plaintiff's lumbar spine was tender to percussion and he had a limited range of motion of the lumbar spine (Tr. 283). Plaintiff had low back pain on flexion and posterior extension (*id.*). Plaintiff was able to stand erect and toe walk, heel walk and tandem walk (Tr. 284).

Plaintiff again saw Dr. Ball on August 2, 2004, and Plaintiff rated his pain as a six out of ten (Tr. 323). He stated standing and walking made his pain worse, while lying down and taking his medication improved his pain (*id.*). On physical examination, Plaintiff's lumbar spine had a limited range of motion and was tender to percussion (Tr. 324). He had low back pain at 40 degrees forward flexion and 20 degrees posterior extension (*id.*). Plaintiff had a normal range of motion in his lower extremities and was able to toe walk, heel walk and tandem walk (Tr. 324-25). Dr. Ball's primary impression was lumbar/lumbosacral disc degeneration; lumbosacral spondylolysis; postlaminectomy syndrome, lumbar region; and osteoarthritis, localized, primary (Tr. 325).

On September 27, 2004, Plaintiff saw Stephen King, M.D., an orthopedist, for a consultative examination at the request of the ALJ (Tr. 296-99, 303). A physical examination showed a slow, deliberate wide-based gait and a somewhat limited range of motion of the lumbar spine, with forward flexion to 70 degrees and extension to ten degrees (Tr. 297). Ranges of motion of the hips and knees were normal (*id.*). Plaintiff was neurologically intact in L3-S1; his motor and sensory functions were also intact (Tr. 297). He was able to heel and toe walk (Tr. 297). Dr. King also reviewed treatment notes, including notes from Dr. Hodges and Dr. Ball (Tr. 297). Dr. King found there was no evidence of pseudoarthrosis, fixation failure, or hardware failure (Tr. 297-98). Dr. King opined Plaintiff could lift up to ten pounds frequently and 20 pounds occasionally, stand/walk at least two hours in an eight-hour workday, and sit six hours in an eight-hour workday (Tr. 298, 300). Dr. King found Plaintiff could engage in climbing, balancing, kneeling, and crouching, but these activites were to be avoided if possible (*id.*). Dr. King also found Plaintiff could push/pull up to 40 pounds with the upper and lower extremities (*id.*).

On October 7, 2004, Plaintiff rated his pain as five out of ten and stated the pain was made worse by standing, walking and exercise and made better by medication and lying down (Tr. 320-22).[2] Plaintiff was "able to participate in activities of daily living on current medical regimen" (Tr. 320). Plaintiff had a limited range of motion of his lumbar spine which was tender to percussion (Tr. 322). Forward flexion was positive for low back pain and 40 degrees and posterior extension was positive for low back pain at 30 degrees (*id.*). Plaintiff had a normal range of motion in his lower extremities (*id.*). His gait was normal and he was able to toe walk, heel walk and tandem walk (*id.*).

---

[2] The October 7, 2004 medical report is from Consultants in Pain Management (Tr. 320) and is signed by a certified adult nurse practitioner who apparently works with Dr. Ball (Tr. 322).

The primary impression was lumbar/lumbosacral disc degeneration and postlaminectomy syndrome, lumbar (*id.*).

### *Hearing Testimony*

#### <u>May 2004 Hearing</u>

Two hearings were held before the ALJ, with the first hearing held on May 20, 2004 (Tr. 333-73). Plaintiff testified he has not worked since May 1, 2001 (Tr. 337). He received long-term disability benefits for his condition which were terminated on November 13, 2003 (*id.*). In the past, he worked as a local truck driver; an upholsterer; and a "re-worker"(Tr. 338). Plaintiff stated he had degenerative disc disease which was not the result of a work-related injury (Tr. 339). When Plaintiff was asked whether he ever contemplated returning to work, he responded, "I don't know what I can do." (*id.*).

Plaintiff lives with his wife, who is unable to work due to a head injury (Tr. 339-40). They have one child, a ten-year-old daughter (Tr. 340-41). Plaintiff has a driver's license and is able to drive (Tr. 341). In addition to driving to his doctor's office and the grocery store, he drives his daughter to school, to cheerleading events and gymnastics classes (Tr. 341-43, 345). Plaintiff also visits with family (Tr. 342). On a daily basis, Plaintiff helps his daughter get ready for school and then drives her to school (Tr. 343). He also cares for his four dogs (Tr. 343-44). Plaintiff testified he occasionally cares for his yard using a push mower, although his brother helps him mow the lawn (Tr. 345). Plaintiff stated he also does a little cooking; however, his family usually eats at his mother's house (Tr. 346).

Plaintiff also stated he was able to do some household chores (Tr. 356). Although he had not been doing any sweeping or mopping, Plaintiff testified he believed he could sweep a small

room (*id.*).  The amount of sweeping Plaintiff could do would be limited by the amount of time he needed to spend standing (Tr. 356).  Plaintiff also stated he believed he could vacuum a small room, but he did not believe he could run a vacuum constantly (Tr. 357).  Plaintiff spends about 75 percent of his day sitting in his recliner, which is where Plaintiff stated he feels the most comfortable (Tr. 358).  Plaintiff stated surgery relieved his back pain to some extent (Tr. 359).

Plaintiff estimated he could sit comfortably in an office-type chair for about one-and-one-half to two hours (Tr. 346).  He also estimated he could stand for three to four minutes and walk on level ground for five to ten minutes (Tr. 346-47).  Plaintiff stated he could lift 30 to 40 pounds, provided he was only required to lift such an amount of weight once (Tr. 347).  Plaintiff estimated he could lift ten pounds frequently (Tr. 348).

Plaintiff testified his pain was six or seven on a scale of pain from one, mild pain, to ten, severe pain such as childbirth (Tr. 351).  Plaintiff experienced pain in his back and legs (*id.*).  His pain starts above his right hip and runs down his left leg (*id.*).

After Plaintiff's testimony, the ALJ stated he would send Plaintiff for an orthopedic consultative examination because he was "not seeing anything from Dr. Hodges for two years or more that was of any consequence" (Tr. 360).

**January 2005 Hearing**

While Plaintiff was present at the second hearing held on January 18, 2005, he did not testify (Tr. 374-87).  Robert Bradley, the vocational expert ("VE"), testified that if the assessment of Dr. Ball that Plaintiff was limited to a maximum of four hours sitting out of an eight-hour day and two hours standing and/or walking out of an eight-hour day were credited, then Plaintiff would be unable to perform substantial gainful activity (Tr. 381-82).  The VE also testified that if Dr. King's

September 2004 assessment were credited, then Plaintiff would have the RFC to perform a full range of sedentary work and a reduced range of light work (Tr. 382). The VE stated Dr. King's opinion was consistent with Plaintiff being able to perform 100 percent of sedentary, unskilled occupations and 25 percent of light, unskilled occupations (Tr. 383).[3]

## Analysis

Plaintiff has not challenged the ALJ's finding that he was disabled by severe impairments which included degenerative disc disease and degenerative joint disease beginning on May 1, 2001 (Tr. 15, 18, 21). Instead, the issues raised by Plaintiff concern the ALJ's decision to award a closed period of disability and terminate Plaintiff's benefits as of September 27, 2004 [Doc. Nos. 7, 12]. Plaintiff argues the ALJ erred in finding Plaintiff's medical condition improved to the point Plaintiff could perform a reduced range of light work and a full range of sedentary work activity as of September 27, 2004 (*id.*).

### *Termination of Disability Benefits*

Disability benefits can be terminated if substantial evidence shows: (1) there has been a medical improvement in a plaintiff's condition which relates to the plaintiff's ability to work, and (2) the plaintiff currently has the ability to engage in substantial gainful activity. *Cutlip v. Secretary of Health and Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (per curiam). In a termination case, the Commissioner bears the burden of showing the plaintiff's condition has improved since the initial award of benefits. *Holden v. Heckler*, 615 F. Supp. 686, 690 (N.D. Ohio 1985). The decision as to the termination of benefits "must 'be made on the basis of the weight of the evidence and on

---

[3] Plaintiff conceded if the ALJ were to credit Dr. King's assessment and find Plaintiff could perform a full range of unskilled, sedentary work, then it would be redundant to elicit exemplars of specific sedentary, unskilled jobs which the Plaintiff could perform from the VE (Tr. 384).

a neutral basis with regard to the individual's condition, without any initial inference as to the presence or absence of disability being drawn from the fact that the individual has previously been determined to be disabled.'" *Cutlip*, 25 F.3d at 286 (quoting 42 U.S.C. § 423(f)(1)). "To terminate benefits previously granted, the [Commissioner] must establish that the previously established disabling condition has improved." *Harmon v. Secretary of Health and Human Servs*., 749 F.2d 357, 358 (6th Cir. 1984) (per curiam).

"In a 'closed period' case, the decision maker determines that a new applicant for disability benefits was disabled for a finite period of time." *Pickett v. Bowen*, 833 F.2d 288, 289 n. 1 (11th Cir. 1987). In such a case, "both the disability decision and the cessation decision are rendered in the same document." *Id.* "The [Commissioner] requires that the 'medical improvement' standard . . . be applied to 'closed period' claims. The 'onset date' (*i.e.*, the date disability was determined to exist) is used as the comparison point with the present to determine if 'medical improvement' has occurred." *Id.* at 292 n.2. A "medical improvement is any decrease in the medical severity of your impairment(s) which was present at the time of the most recent favorable medical decision that you were disabled or continued to be disabled." 20 C.F.R. § 404.1594(b)(1). "A determination that there has been a decrease in medical severity must be based on changes (improvement) in the symptoms, signs and/or laboratory findings associated with your impairments." *Id.* A medical improvement is related to a plaintiff's ability to work if there has been a decrease in the severity and an increase in the plaintiff's functional capacity to do basic work activities. 20 C.F.R. § 404.1594(b)(3). To determine whether medical improvement has occurred, the Commissioner "will compare the current medical severity of that impairment(s) which was present at the time of the most recent favorable medical decision that you were disabled or continued to be disabled to the medical

severity of that impairment(s) at that time." 20 C.F.R. § 404.1594(b)(7).

***Treating Source Opinions***

The ALJ found the record showed an improvement in the severity of Plaintiff's impairments beginning in September 2004 (Tr. 19). In evaluating Plaintiff's condition as of September 27, 2004, the ALJ obviously did not give controlling weight to the opinions of Plaintiff's treating physicians, Drs. Hodges and Ball, as they related to Plaintiff's condition in September, 2004. The ALJ did accord significant weight to Dr. King's consultative examination as it related to Plaintiff's ability to work on and after September 27, 2004 (Tr. 19). The ALJ explained his findings concerning the medical source opinions stating:

> From May 1, 2001 until September 27, 2004, the claimant had limitations, primarily as a result of degenerative disc disease, which prevented him from performing even sedentary work on a full-time basis. The claimant's treating orthopedic surgeon, Dr. Hodges, stated on several occasions, through January 2003, the claimant was prevented from performing his past work or any work until he recovered sufficiently from surgery. Dr. Ball, the claimant's pain physician, also opined limitations, in February 2004, which preclude even sedentary work activity on a full-time basis. Therefore, not withstanding the functional capacity evaluation, my review of the record reveals a significant deficiency in the claimant's ability to perform the work-related activities required by even sedentary work, until September 27, 2004. . . .

> Beginning September 27, 2004, the record shows the severity of the claimant's impairments medically improved, and allows for light and sedentary work activity. The consulting physician, Dr. King opined limitations which allow a reduced range of light work activity and a full range of sedentary work activity. The claimant's activities support this level of work activity. The record shows gradual improvement in the claimant's pain, subsequent to his surgery, and minimal abnormalities were evident on Dr. King's examination on September 27, 2004. Therefore, I afford his opinion significant weight, as it pertains to the claimant's ability to work, beginning September 27, 2004, and I find that the claimant's impairment's medically improved and he regained the ability to perform a reduced

range of light work and a full range of sedentary work activity.

(Tr. 18-19) (internal citations omittted).

Applicable regulations state the Commissioner will evaluate every medical opinion and will consider the following factors in deciding what weight to give each opinion: examining relationship; treatment relationship; supportability; consistency; specialization; and other factors. 20 C.F.R. §§ 404.1527(d), 416.927(d). Although a treating physician's opinion typically is entitled to substantial deference, as argued by Plaintiff, the ALJ is not bound by that opinion. *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004); 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2). The Sixth Circuit has consistently stated the treating source's opinion is entitled to deference only if it is based on objective medical findings, *see, e.g.*, *Warner*, 375 F.3d at 390; *Bogle v. Sullivan*, 998 F.2d 342, 347-48 (6th Cir. 1993), *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985), and not contradicted by substantial evidence to the contrary. *Hardaway v. Sec'y of Health & Human Servs.*, 823 F.2d 922, 927 (6th Cir. 1987). If the treating source's opinion is not given controlling weight, its weight is determined by the same factors that are considered in evaluating every medical opinion. The ALJ must weigh the opinions of the acceptable medical sources, including the opinions of the treating physicians and the state agency medical sources, as required by applicable regulations, and resolve inconsistencies between the acceptable sources. *See* 20 C.F.R. §§ 404.1527(d)(4), (f)(2)(i) and 416.927(d)(4), (f)(2)(i); *Mullins v. Sec'y of Health & Human Servs.*, 836 F.2d 980, 984 (6th Cir. 1987) ("Claimant's argument rests solely on the weight to be given opposing medical opinions, which is clearly not a basis for our setting aside the ALJ's factual findings.").

The Sixth Circuit has held the opinion of a treating physician generally is entitled to greater weight than the contrary opinion of a consulting physician who has examined the claimant on only

a single occasion. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529-30 (6th Cir. 1997); *Hardaway*, 823 F.2d at 927. An ALJ may, however, discount a treating physician's opinion based on an opinion of an examining or a reviewing physician in appropriate circumstances. *See Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1234 (6th Cir. 1993); *Moon v. Sullivan*, 923 F.2d 1175, 1183 (6th Cir. 1990). The responsibility for weighing the record evidence, including conflicting physicians' opinions, and resolving the conflicts rests with the ALJ. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). In addition, the ALJ must give good reasons for the weight given a treating source's opinion. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 545-46 (6th Cir. 2004); *Hall v. Comm'r of Soc. Sec.*, 148 Fed. App. 456 (6th Cir. 2005).

In light of the recent Sixth Circuit opinions issued in *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541 (6th Cir. 2004); *Hall v. Comm'r of Soc. Sec.*, 148 Fed. App'x 456 (6th Cir. Sep. 2, 2005) (unpublished); and *Nelson v. Comm'r of Soc. Sec.*, No. 05-5879, 2006 WL 2472910 (6th Cir. Aug. 28, 2006) (unpublished), the Court directed the parties to address the ALJ's failure to explicitly discuss the weight accorded to the opinions of Plaintiff's treating physicians and/or the "good reasons" for the weight accorded to the treating sources' opinions in the ALJ's determination that Plaintiff's condition had medically improved as of September 27, 2004 [Doc. No. 14]. Plaintiff timely filed a supplemental brief on September 25, 2006 [Doc. No. 16], and the Commissioner filed a supplemental brief on September 29, 2006 [Doc. No. 17].[4]

---

[4] The Commissioner filed a motion seeking an extension of time, up to and including October 2, 2006 in which to file her supplemental brief [Doc. No. 15]. No objection was filed to the Commissioner's motion for an extension of time. As the parties were given until September 25, 2006 to file their supplemental brief and until October 9, 2006 to file any reply brief [Doc. No. 14 at 1-2], the Commissioner's supplemental brief [Doc. No. 17] was deemed to be timely filed and was considered in making this report and recommendation.

In his supplemental brief, Plaintiff objects to the ALJ's determination his condition medically improved on September 27, 2004 on the following two grounds: "the ALJ failed to give an express reason for rejecting the opinion of Dr. Ball; and the ALJ failed to offer a reason grounded in medical improvement for apparently crediting Dr. Ball's opinion before September 2004, but rejecting it thereafter." [Doc. No. 16 at 3-4]. In her supplemental brief, the Commissioner asserts the ALJ's failure to explicitly discuss the weight accorded to the opinions of Plaintiff's treating physicians, Drs. Hodges and Ball, was harmless error because the ALJ's opinion implicitly provided sufficient reasons for rejecting the opinions as they relate to the time period after September 27, 2004, and the opinions were accepted for the time period prior to September 27, 2004 [Doc. No. 17 at 3-5].

In *Wilson*, 378 F.3d at 544-45, the Sixth Circuit held decisions of the Commissioner are subject to remand for a failure to articulate "good reasons" for not crediting the opinion of a treating source under 20 C.F.R. § 404.1527(d)(2). The Sixth Circuit indicated it was not prepared to excuse the ALJ's failure to follow the requirements of § 1527(d)(2) merely because there was sufficient evidence in the record upon which an ALJ could discount a treating source's opinion, which made a different outcome on remand unlikely. *Id.* at 546. The Sixth Circuit also noted a failure to follow the procedural requirement of § 1527(d)(2) might be a violation so *de minimis* that it would constitute harmless error. *Id.* at 547. Examples of such harmless error suggested by the court included situations where: (1) the treating source's opinion was so obviously deficient the ALJ/Commissioner could not possibly give credit to it; (2) the ALJ/Commissioner adopts the opinion of the treating source or makes findings consistent with the treating source's opinion; or (3) the ALJ/Commissioner has actually met the goal of § 1527(d)(2) without explicitly complying with the terms of the regulation. *Id.*; s*ee also Hall*, 148 Fed. App'x at 462 (same). The disputed issue

in this case involves the third example: whether the ALJ actually met the goal of § 1527(d)(2) without explicitly complying with the terms of the regulation when he found Plaintiff capable of work beginning September 27, 2004.

With respect to whether harmless error results when the ALJ has met the goal of § 1527(d)(2), the court in *Hall* explained:

> the ALJ could have met the goal of providing good reasons [for dismissing the medical opinion of Dr. Caudill (the treating physician) regarding Hall's (the claimant's) back ailment] by either his analysis of Dr. Caudill's other opinions or his analysis of Hall's back problems in general. Such analyses would perhaps adequately address Dr. Caudill's opinion about Hall's back pain by indirectly attacking the "supportability" of the doctor's opinion, or the "consistency" of his opinion with the record as a whole, both of which are grounds for rejecting a treating source opinion. However, it is critical that, when reviewing the ALJ's reasoning for this purpose, we remember the goals of the procedural safeguard. We are reviewing the 1998 decision to see if it implicitly provides sufficient reasons for the rejection of Dr. Caudill's opinion regarding Hall's back, ...not merely whether it indicates that the ALJ did reject Dr. Caudill's opinion.

*Id.* at 464 (internal citations omitted). In *Hall*, the court found the ALJ's failure to adequately explain his decision to reject the opinion of the claimant's treating physician was not harmless error, and the case was reversed and remanded. *Id.*

The Sixth Circuit has found the goals of § 1527(d)(2) were satisfied even though there was a failure to explicitly comply with the requirements of § 1527(d)(2) in one case cited by the parties. In *Nelson*, 2006 WL 2472910 at * 8-9, the Sixth Circuit held harmless error occurred because:

> We find...the ALJ's analysis of Nelson's mental problems adequately addressed [the treating sources'] opinions by indirectly attacking both the consistency of those opinions with the other record evidence and their supportability. The ALJ implicitly provided sufficient reasons for not giving those opinions controlling weight, and indeed for giving them little or no weight overall. The ALJ thus, "met the goal of § 1527(d)(2) – the provision of the procedural safeguard of reasons

– even though she has not complied with the terms of the regulation." We take the opportunity to note, however, that this is a rare case of the ALJ's analysis meeting the goal of the rule even if not meeting its letter. The Commissioner's own regulations and our case law state that the Commissioner must provide good reasons for rejecting the medical opinion of a treating source. That rule is a "procedural protection," and a way of ensuring "meaningful review" of the ALJ's decision.

*Nelson*, 2006 WL 2472910 at * 9 (internal citations omitted).

The Commissioner concedes the ALJ accepted the opinions of Plaintiff's treating physicians that Plaintiff was disabled for the period up to January 2003 for Dr. Hodges and up to February 2004 for Dr. Ball [Doc. No. 17 at 2]. The Commissioner further concedes the ALJ did not explicitly discuss the weight accorded to the opinions of Dr. Hodges and Dr. Ball in reaching his finding that, as of September 27, 2004, Plaintiff's impairments medically improved and allowed him to perform a full range of sedentary work and a reduced range of light work [*id.* at 3]. The Commissioner asserts the ALJ "implicitly" provided sufficient reasons for rejecting the opinions of Dr. Hodges and Dr. Ball as of September 27, 2004, based upon his acceptance of Dr. King's findings as more consistent with the medical evidence of record [*id.* at 3-4].

The ALJ concluded "[t]he record, taken as a whole, supports the conclusion that the claimant was incapable of performing even sedentary work activity on a full-time basis, from May 1, 2001 until September 27, 2004. Beginning September 27, 2004, the claimant's impairments improved, and allow for a reduced range of light and a full range of sedentary work activity " (Tr. 17). With respect to the opinions of the treating physicians, the ALJ noted that from May 1, 2001 until September 27, 2004 the Plaintiff had disabling limitations and he also noted that Dr. Hodges stated on several occasions through January 2003 that the Plaintiff was unable to perform any work (Tr. 18). Dr. Hodges' most recent opinion is approximately 21 months prior to the date the ALJ found

Plaintiff's disability had ceased. Except for Dr. Hodges' statements that Plaintiff was permanently unable to work, however, the ALJ did not reject Dr. Hodges' opinion. Instead, the ALJ found Plaintiff disabled throughout the period he was treated by Dr. Hodges.

With regard to Dr. Ball's opinion, the ALJ noted Dr. Ball had "opined limitations, in February 2004, which preclude even sedentary work activity on a full-time basis." (Tr. 18-19). The ALJ also noted Dr. Ball continued to treat Plaintiff for chronic pain and that Dr. Ball's physical examinations had shown an antalgic gait, tenderness, limited range of motion, and occasional positive straight leg raising tests (Tr. 16, 186-207, 251-62, 282-84). The ALJ further noted Dr. Ball referred Plaintiff for an FCE in January 2004, which demonstrated ability consistent with an RFC for medium level work (Tr. 16, 228). In contrast, on February 24, 2004, Dr. Ball completed an RFC indicating Plaintiff could lift 10 pounds frequently and 20 pounds occasionally, but sit for four hours total out of an eight hour day and stand or walk for two hours total out of an eight hour day (Tr. 264). In his decision, the ALJ explicitly notes the conflict between Dr. Ball's February 4, 2004 RFC and the results of the January 2004 FCE to which Dr. Ball referred Plaintiff (Tr. 16).

In his RFC, Dr. Ball limited Plaintiff to four hours sitting out of an eight hour day and two hours standing and/or walking out of an eight hour day (Tr. 264). However, at the May 20, 2004, hearing, Plaintiff told the ALJ he could sit comfortably for an hour-and-a-half to two hours in an office type chair; he drove his daughter to school, cheerleading and gymnastics classes; cared for his daughter and his four dogs; did some limited housework; occasionally used a push mower on his lawn and visited with relatives (Tr. 341-46). The ALJ noted that Plaintiff's reported activities of daily living, including some household chores, caring for his daughter, shopping, driving, visiting others, and some use of a push lawn mower (Tr. 341-46), were not inconsistent with performing

some work activity. The ALJ also noted Dr. Ball stated Plaintiff's medications were working well in controlling his pain (Tr. 16).

Dr. King examined Plaintiff in September 2004 and reviewed treatment notes of the Plaintiff, including notes from Dr. Hodges and Dr. Ball (Tr. 296-99). The results of Dr. King's examination showed Plaintiff had a wide-based gait and a limited range of lumbar spine motion (Tr. 297). Plaintiff also told Dr. King his surgery had reduced his pain from a ten on a scale of ten to five or six on a scale of ten, with some exacerbations up to an eight on a scale of ten (Tr. 296). Dr. King opined Plaintiff could perform essentially a full range of sedentary work and a reduced range of light work (Tr. 298, 300-01). In discussing Dr. King's opinion, the ALJ noted that Dr. King found minimal abnormalities in his September 27, 2004 examination of the Plaintiff (Tr. 19).

As argued by Plaintiff, the findings of Dr. Ball were not hugely different from Dr. King's opinion of Plaintiff's condition [Doc. No. 12 at 6]. Plaintiff's physical examinations by Dr. Ball generally showed lumbar tenderness, a limited range of motion of the lumbar spine, and occasional positive straight leg raising tests (Tr. 186-207, 251-62, 282-84, 320-28). On April 29, 2003, Dr. Ball found Plaintiff had tenderness of his lumbar spine, normal straight leg raising at 90 degrees, an antalgic gait, and a full range of motion of his lower extremities (Tr. 186). On February 2, 2004, Dr. Ball found Plaintiff had paravertebral tenderness with limitation to his forward flexion and posterior extension and positive seated leg raises for low back and bilateral lower extremity pain (Tr. 253-54). Dr. Ball also saw Plaintiff on May 11, 2004, and found Plaintiff's lumbar spine was tender to percussion and had a limited range of motion, but Plaintiff was able to toe walk, heel walk and tandem walk (Tr. 283-84). Further, Dr. Ball saw Plaintiff on August 2, 2004, and October 7, 2004 – after Dr. King's examination of Plaintiff. Dr. Ball's physical findings on both occasions were

similar to his findings on May 11, 2004 (Tr. 320-22, 323-25). On October 7, 2004, Dr. Ball's nurse observed Plaintiff was "able to participate in activities of daily living on current medical regimen." (Tr. 320). Despite the readily apparent conflict between the results of the January 2004 FCE and Dr. Ball's February 2004 RFC, the ALJ found Plaintiff was still disabled as of the date of the Dr. Ball's RFC. The primary difference between the findings of Dr. Ball and Dr. King is that Dr. Ball limited Plaintiff to sitting only four hours per day, not allowing a full eight-hour day.

The ALJ apparently accepted Dr. Ball's opinion at least through September 27, 2004. However, the ALJ "implicitly" rejected Dr. Ball's opinion apparently based upon the findings of Dr. King's single consultative examination. The ALJ noted Plaintiff engaged in certain activities of daily living, and also indicated "[t]he record shows gradual improvement in the [Plaintiff's] pain" (Tr. 19). However, when Plaintiff saw Dr. Ball on August 2, 2004, he rated his pain as being a six out of ten and stated standing and walking made his pain worse, but lying down and taking his medication improved his pain (Tr. 323). When Plaintiff was seen in Dr. Ball's office on October 7, 2004, he reported his pain was five out of ten and the pain was made worse by standing, walking and exercise and made better by lying down (Tr. 320-22).

That Plaintiff is able to engage in minor life activities is not inconsistent with a disabling amount of pain. "Plaintiff's ability to engage in these intermittent activities of relatively short duration does not negate the fact that Plaintiff is unable to regularly engage in work due to his pain." *Meece v. Comm'r of Soc. Sec.*, 2006 Fed App. 0569N, 2006 WL 2271336, * 9 (6th Cir. Aug. 8, 2006) (slip op.) (citing *Cohen v. Sec. of Dept. of Health & Human Serv.*, 964 F.2d 524 (6th Cir. 1992)); *see also Walston v. Gardner*, 381 F.2d 580, 586 (6th Cir. 1967) ("The fact that appellant can still perform simple functions, such as driving, grocery shopping, dish washing and floor sweeping,

does not necessarily indicate that this appellant possesses an ability to engage in substantial gainful activity. Such activity is intermittent and not continuous, and is done in spite of the pain suffered by appellant."). Thus, the ALJ's opinion does not implicitly provide sufficient reason for rejecting the treating sources' opinions as of September 27, 2004.

In summary, the reviewing court and the Plaintiff are left to wonder exactly why the ALJ accepted the opinions of Dr. Ball (and apparently Dr. Hodges) regarding Plaintiff's inability to work until September 27, 2004 but not on or after that date. Thus, the Commissioner's decision to terminate benefits as of that date does not meet the "medical improvement" standard, and this does not appear to be the "rare" situation where the ALJ's failure to follow the requirements of 20 C.F.R. § 404.1527(d)(2) was harmless error because the goals of § 1527(d)(2) were satisfied without explicitly satisfying the requirements of the regulation. Rather, the Commissioner's decision is subject to remand under sentence four of 42 U.S.C. § 405(g) for the failure to articulate "good reasons" for not crediting the opinions of the Plaintiff's treating sources under § 1527(d)(2). *Wilson*, 378 F.3d at 544-45.

Accordingly, I conclude the decision of the Commissioner should be **REVERSED** and this matter **REMANDED** to the Commissioner for further findings consistent with this report and recommendation pursuant to sentence four of 42 U.S.C. § 405(g).

## Conclusion

Having carefully reviewed the administrative record and the briefs of the parties filed in support of their respective motions, for the reasons stated above it is **RECOMMENDED**[5]:

---

[5] Any objections to this report and recommendation must be served and filed within ten (10) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the district court's order.

(1)      Plaintiff's motion for judgment on the pleadings [Doc. No. 6] be **GRANTED**;

(2)      Defendant's motion for summary judgment [Doc. No. 9] be **DENIED**;

(3)      Judgment be entered pursuant to Rule 58 of the Federal Rules of Civil Procedure **REVERSING** the Commissioner's decision which awarded a closed period of benefits to the Plaintiff commencing on May 1, 2001 and ending on September 27, 2004; and

(4)      This matter be **REMANDED** to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g) consistent with this report and recommendation.

s/*Susan K. Lee*
SUSAN K. LEE
UNITED STATES MAGISTRATE JUDGE

*Thomas v. Arn*, 474 U.S. 140, 149 n.7 (1985).  The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive and general.  *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986).  Only specific objections are reserved for appellate review.  *Smith v. Detroit Fed'n of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).